# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | | |
|---|---|---|
| DAVID B SMITH | § | CIVIL ACTION NUMBER |
|     Plaintiff, | § | 3:15cv29-TCB |
| | § | |
| vs | § | |
| | § | |
| | § | FILED IN CLERK'S OFFICE |
| WEST GEORGIA MEDICAL CENTER | § | U.S.D.C. - Newnan |
| aka, WEST GEORGIA HEALTH and | § | |
| EMORY HEALTHCARE | § | |
| aka, EMORY CLARK-HOLDER CLINIC, | § | FEB 1 3 2015 |
| THE EMORY CLINIC, INC. | § | |
| and | § | James N. Hatten, Clerk |
| DR. JAMES A. BRENNAN, MD, | § | By: Deputy Clerk |
| individually and professional | § | |
| capacity | § | |
| DR. JULIA BALLARD, MD, | § | |
| individually and professional | § | |
| capacity | § | **JURY TRIAL DEMAND** |

## COMPLAINT

**COMES NOW**, David B. Smith, Plaintiff, and files this Complaint on the above named Defendants and shows the Honorable Court the basis for said complaint are as follows:

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is pursuant to 28 United States Code § 1332; 28 United States Code § 1343. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 United States Code § 1367.

2. Plaintiff herein referred to and incorporated as 'Smith' is a resident of Texas and has been a resident for more than twenty years.

1

3.  Defendant, West Georgia Medical Center, aka, West Georgia Health, herein referred and incorporated as 'WGM', is a business operating in the County of Troup, Georgia.

4.  Defendant, Emory Healthcare, aka, Emory Clark-Holder Clinic, The Emory Clinic, Inc. is a business operating throughout the State of Georgia, with correspondence and references tracing to PO Box 102398, Atlanta, GA 30368-2398; herein incorporated by reference as 'Emory'.

5.  Defendant, Dr. James A Brennan, MD is a person licensed by the Georgia Medical Board, operating in Troup County, Georgia; herein referred to as 'Brennan'.

6.  Defendant, Dr. Julia Ballard, MD is a person licensed by the Georgia Medical Board, operating in Troup County, Georgia; herein referred to as 'Ballard'.

7.  Based on reasonable information and belief, additional Defendants are likely to be enjoined in this action whose principle place of business is South Carolina, upon further Discovery proceedings and determination of responsibility the Plaintiff will tender appropriate amendments and service.


## INTRODUCTION AND HISTORICAL BACKGROUND

8. This complaint arises from when the Plaintiff, a resident of the State of Texas and an Over-the-Road Truck Driver became progressively ill over several days preceding a visit to the Defendants. Plaintiff contacted his Insurance Carrier and was directed to West Georgia Medical Center, a Provider in the Carrier network.

2

**notates punctuation by author

9. Plaintiff arrived at the Defendants facility on 15 February 2013 @ approximately 13:15 hours and entered at the front lobby Admissions desk. Plaintiff asked if he could see a Doctor, that he was referred by his Insurer and believed he had an infection of some type. Plaintiff was then taken to the ER. Plaintiff had very specific complaints of inflammation, tenderness and pain in his right groin lymph area (Inguinal Nodes) profuse sweating; Plaintiff also had begun to have trouble breathing and experienced pain in his upper back while lying in any prone position, which was only alleviated by being in a sitting position. Plaintiff explained this to the practitioner in Emergency Room, his inability to sleep in the last twenty-four (24) hours due to the conditions.

10. Plaintiff was asked to remove his shirt and was hooked to an EKG, specifically, a GE Marquette 12 Lead Interpretive EKG. The first result of this automated (smart machine) was that the Plaintiff was suffering a Heart Attack, specifically a Myocardial Infarction. When informed, by the Practitioner, the Plaintiff was confused and disbelieving and watched as the staff sprang into action. The Plaintiff demanded that another test be performed, which bore the same result. Plaintiff informed the staff that he had a Right Bundle Branch Block and had such RBBB since early childhood. The staff stated that they were aware of that and it had no effect on the results being reported by the machine.

11. Plaintiff was stripped and placed on a gurney and told that he would need immediate surgery and would require a 'stent' be placed in the area of blockage and that failure to do the procedure would result in death or serious stroke. Plaintiff still protested against surgery and demanded to speak to his wife, who was allowed

3

briefly into the surgical room. She (wife) too, was told the same thing by Hospital staff. By this time the Plaintiff had been administered Morphine via an IV tube and was unable to think or function with normal capacity. Plaintiff's wife consented to the procedure on his behalf and incapacity, relying upon the expertise of the Hospital Staff and had a reasonable expectation of their evaluation being true and correct. Plaintiff's wife signed consent to proceed based on the misrepresentations of the Hospital Staff and the coercive statements made to her. Additionally, the Staff used language that placed the Plaintiff's wife under duress and emotional distress.

12. Evidence provided by Hospital Records show that Plaintiff was induced with Morphine without his consent and consent was not granted by spouse until after the Morphine was administered to Plaintiff.

13. Plaintiff was provided an ultrasound of the Inguinal Nodes which showed inflammation. Plaintiff, fighting the drug induced state, asked attending Physician if they could first do an ultrasound on his chest, to eliminate the possibility of some other problem. Plaintiff was told that the ultrasound would not produce any result that would be productive.

14. Plaintiff was given a chest x-ray prior to the procedure beginning, the use of this x-ray is not yet understood, since the procedure began immediately following the x-ray and the Radiology results were not available until many hours following the procedure. Those results revealed that the Plaintiff had the onset of pneumonia.

**notates punctuation by author

15. The result of this 'Horse Race' was that Plaintiff had absolutely no blockage of the heart, blood chemistry (had they waited) revealed no enzymes for heart attack, x-ray revealed (had they waited) the onset of pneumonia. **Three hours following the unnecessary procedure, the EKG continued to provide the same false result and was, by the record, marked out by staff and a diagnosis of Pericarditis (Infection) was then made. The elapsed time from walking in the Front Lobby to the completion of the unwarranted and misdiagnosed surgical procedure was one hour and twenty one minutes (01:21 mins).

16. Plaintiff recalls a vague conversation in the recovery process between staff, asking and showing concern about the time line of the entire procedure and something about compliance. Evidence will show that this conversation is pertinent to the Hospitals Accreditations, the cause of the oversights and the reckless speed at which the Plaintiff suffered at the hands of the Hospital. Further it will be clearly demonstrated that the Accreditation is for the purpose of financial gain, while failing to provide proper care and oversight to patients.

17. Months following the surgical procedure, Plaintiff received a bill from Emory which was not a part of the Provider Network and was for the second attending Physician, Brennan, who had previously presented himself as a staff member of West Georgia Medical. This caused confusion with both Plaintiff and Insurance Carrier in determining the validity of the billing and was also placed as a derogatory statement on the Plaintiff's credit report. At no time was Plaintiff informed that Brennan was not a staff member of WGM and at no time prior or thereafter was Brennan identified by Emory.

**notates punctuation by author

18. Plaintiff also received unpaid bills from WGM, after the Insurance Carrier refused to pay for the surgical procedure, having reviewed the details of the surgery and finding that the procedure was unnecessary and without cause. The matter has now gone to collection by a second collection agency, Amcol Systems, who has repeatedly refused to validate the charges and has placed additional derogatory statements on Plaintiff's credit report, despite numerous calls and letters to cease and that the validity of the charges are in dispute.

## DOCUMENTARY EVIDENCE AND SUPPORTING EVIDENCE

19. Plaintiff certifies that all documents attached and incorporated within this Complaint are true copies of those in Plaintiff's position and control, and that those provided by WGM are true and correct copies as provided by WGM at time of discharge.

20. Plaintiff certifies that all documents attached and incorporated herein, gleaned from websites or thru online discovery are true and correct copies as printed from the respective sites.

21. Attached and incorporated herein are Exhibits A, B, C and D; the first four (4) EKG results obtained immediately following the Plaintiff's arrival to Emergency Room. Specifically, these exhibits reveal Patient ID, date, time and findings, each marked by the Technician, initialed and identified in sequence as #1, #2, R and #3 in the hand of the Technician. Each document shows that the result is ***ACUTE MI***. Each identifies the presence of a Right Bundle Branch Block, which shall prove significant to the false positive and should have signaled a trained operator and

6

physician to exercise further examination and take appropriate precautions.

22. Attached and incorporated herein, Exhibit E, with an identified time stamp of 16:42:39, an EKG that was taken three (3) hours after the close of the surgical procedure, that found no blockage and no 'stent' was implanted. Comparative examination to Exhibits incorporated in para 21 (A-D) shows ***Acute MI***, Right Bundle Branch Block being reported. As yet, an unidentified person has marked out the EKG results and entered hand written notes as; Possible Pericarditis, Doubt Acute MI. Plaintiff has yet to confirm signature.

23. Attached and incorporated herein, Exhibit F, an Electrocardiograph Report from an EKG taken the following morning on 02/16/13 at 07:33. While the contrasting EKG chart was not made available to Plaintiff, the document demonstrates an ongoing false positive, ***ACUTE MI***, nearly 17 hours after the surgical procedure was concluded.

24. Attached and incorporated herein, Exhibit G, the Emergency Chest Pain Procedure Report, a two (2) page document. The document reveals specific facts; Located at Line 1) Pain Assessment on Arrival: 4; located on line 9, subparagraph 2, Morphine is checked and indicates in written hand note of 5mg administered @ 1350 hours.

25. Attached and incorporated herein, Exhibit H, the consent to treat an Acute Myocardial Infarction, signed at 1353 by spouse.

26. Attached and incorporated herein, Exhibit I, the Cath Lab Pre-Cath Checklist. This documents supports the Plaintiff's own contention that he was not experiencing chest pain, as indicated

7

in hand written note: Chest Pain at Entry (checked) 'No' (hand written note) Back Pain 4/10

27. Attached and incorporated herein, Exhibit J, Physician Documentation Report. The report clearly defines multiple symptoms of Plaintiff, those being: Dyspnea (labored breathing); Diaphoresis (sweating to an unusual degree), Deep Breathing. More specifically, the report supports the claim of Plaintiff to be suffering from 'severe right groin pain'. This report was produced by Ballard.

28. Attached and incorporated herein, Exhibit K, Inpatient Cumulative Summary of Blood Laboratory Report, a four (4) page report. The report shows a blood draw time of 1331 hours, with a completion time, page 4 at 1420 hours. The report supports the following:

    a. The 'Lymph%' is low, indicating that Lymphocytes are being trapped in the lymph node system, causing the body's resistance to infection to be low and susceptible to infection.

    b. The 'Mono%' is high, indicating that Monocytes have increased, typically a response to the presence of infection.

    c. The 'WBC' (White Blood Cell) is high, indicating, most typically the presence of infection by bacteria or virus.

    d. The 'RBC' (Red Blood Cell) is high, typically indicating a response to a lack of oxygen and pulmonary distress.

    e. The report, pages 3 and 4, reference ranges (F), (G) and (H) shows that Smith has very low Cholesterol and his risk factor is well below the minimal amounts for even Low Risk.

8

Exhibit K, the results of twenty different and specific results, shows that in only four (4) there is an abnormal range and that all four (4) point directly to an infection and to the Plaintiff's actual and real complaints to the Practitioner at time of triage.

### SUPPORTING DOCUMENTATION ONLINE

The online documentation for the GE 12SL Program, located at:

http://www.fondacomedical.com/clinical_papers/12SL%20Statement%20o f%20Validation%20and%20Accuracy.pdf        specifically cites in the Introduction on page 4 the following:

*"It should be made clear that a computerized analysis is not a substitute for human interpretation. There are two reasons for this. First, statements of accuracy need to be viewed from a statistical perspective. Although accuracy levels may be high, outliers can and will exist. Second, a computer does not have the ability to include the entire clinical picture of the patient. Despite the fact that the 12SL analysis program has a high level of accuracy, it will occasionally not correctly interpret an EKG. The EKG tracing is significant only when interpreted in conjunction with clinical findings. Thus, it is critical that a physician utilizes his/her best clinical judgement when reviewing the EKG interpretation."*

In an abstract published by the National Center for Biotechnology Information and the National Institute of Health, cited, as: Computerized interpretation of the prehospital electrocardiogram. The conclusions of the findings were as follows: (http://www.ncbi.nlm.nih.gov/pubmed/24626114 )

9

**notates punctuation by author

"The estimated 26.0% chance that a positive interpretation is false is likely too high for activation of a catheterization laboratory from the field. Acquiring prehospital EKGs does not substantially increase on-scene time in the BLS setting."

These are just a few of the reviews and do not reflect the full extent of the studies made regarding the use of this biotechnology device.

## CONCLUSION

There is absolutely no doubt and it cannot be disputed that the Plaintiff was grossly misdiagnosed and was forced to suffer a treatment that was not needed and resulted in unnecessary bodily harm, emotional and mental abuse to the patient and family members and protracted financial loss. Additionally, Plaintiff was placed in harm's way and more risk by the performance of a surgical procedure that could result in greater harm.

There is no disputing that the biotechnology device used was completely dysfunctional and continued for hours upon hours to produce a result that was conclusively proven not to be accurate and totally false.

The scheme of activity further results in not only the Plaintiff being charged for services that were unnecessary, but when compounded over all those whom Defendants provide services to; results in false billings of both private and public payers', escalating insurance costs, to which the only benefactor are the Defendants.

10

\*\*notates punctuation by author

## SPECIAL AND SPECIFIC CLAIMS

### COUNT I - O.C.G.A. 16-5-20 ASSUALT

Based on the evidence contained in Exhibits G and H, the charge of Assault is irrefutable. The Defendants, without consent or the knowledge of Plaintiff injected his person with Morphine; a psychoactive drug rendering Plaintiff's reasoning abilities incapacitated. This action was a violation of the Plaintiff's rights, stifled his ability to provide informed consent and prevented him from communication with spouse in a proficient manner. Plaintiff was protesting the necessity of the invasive procedure before the injection, which shall be supported by oral testimony.

### COUNT II - O.C.G.A. 16-5-23 BATTERY

Based on the contained in Exhibits G and H, the charge of Battery did occur. The Defendants did make contact with Plaintiff by the use of a needle and other device without the consent of Plaintiff.

### COUNT III – GROSS NEGLIGENCE

The combined aggregate of the Defendants actions constitute gross negligence, in that:

1) The Defendants made a conscious and voluntary decision to disregard the actual complaints of the Plaintiff and in doing so, made a willful decision to ignore his actual symptoms.

2) Defendants knowingly invaded the privacy and rights of the Plaintiff and committed acts of Assault, Battery and Bodily Injury, with willful disregard to his protests and demands to see his spouse.

**notates punctuation by author

3) Failed to exercise even the most basic standards of care and caution in treatment and diagnosis.

4) Defendants, knew or should have known that the EKG machine in use has a 'false positive' result 26% of the time, and in some cases higher.

5) Defendants, knew or should have known, had any prudent and reasonable person read and been instructed on the EKG, that it is never, under any circumstances, to be used as the sole deciding factor in determining the true nature and condition of the patient.

6) Defendants failed to perform an actual physical examination, utilizing the basic stethoscope, the Pericarditis would have been discovered, a known mimic of 'false positive' results.

7) The Defendants ignored the patients provided statements of a Right Bundle Branch Block, which Plaintiff said he had since birth, recognized as the fifth most common cause of a false positive results.

The totality of these actions is not only Gross Negligence, but Unconscionable and undermines public trust. As a direct and proximate cause of the actions of Defendants, Plaintiff suffered unnecessary bodily injury that resulted in financial loss and revenue for several weeks.

## COUNT IV - FRAUD AND MISREPRESENTATION

1. Defendants, in order to achieve financial gain and expand service marketplace, advertises an Accreditation from The Society of Cardiovascular Patient Care (SCPC), to which such is the core and proximate cause of the failed care and accelerated speed of the procedure, disregarding standard

12

diagnostic procedures. Defendants, in order to maintain the accreditation have cut corners and resolved to utilize an unproven and highly controversial medical device.

2. The Defendants have utilized the Accreditation to devise an 'assembly line' of unnecessary angioplasty procedures, that place the consumer and general public at high risk and are at least 26% of the time, false results, causing the consumer and their insurers to incur unnecessary costs and risk to health and life, while increasing their financial gain.

3. The actions and inaction of Defendants, support the allegations set forth, more specifically;

   a. Defendants ignored the actual symptoms and complaints of Plaintiff upon assessment and moved straight to the Angioplasty (STEMI) procedure, without regard to other possible diagnosis and ignoring standards of care, safety and sound clinical evaluation.

   b. Defendants failed to wait for appropriate secondary results of radiology and blood labs.

   c. Defendants repeatedly ignored the Plaintiff's refusal for surgical treatment in order to pursue an expensive and high cost procedure, to which they believed the Insurer would pay.

   d. When Plaintiff refused surgical treatment and repeatedly argued and made demands to speak with spouse, Defendants rendered him incapacitated in order to meet their own objectives.

The use of emotional distress, threat of death, willful indifference to the patients concerns, coupled with the false results and hurried pace, creates an overall scheme of a service needing to be provided, that is simply mired in fraud, deception, undue influence and emotional distress. The scheme however, is

13

** notates punctuation by author

highly profitable for Defendants, producing as much as $3000 for the surgeon, per patient, with as many as six (6) procedures per day.

Based on information and belief, the pattern of activity allows for multiple parties and unaffiliated businesses to inflate costs and bill services which they did not actually render and upon investigation could not produce even so much as the name of the Physician for whom they were billing or procedure that was rendered.

### COUNT V – O.C.G.A. § 10-1-390 FAIR BUSINESS PRACTICES ACT

1. Defendants individually and collaboratively have intentionally and willfully set forth a deceptive practice, which the Plaintiff believed that services were being rendered by an approved provider and by WGM staff.

    As defined and set forth:

    § 10-1-393. Unfair or deceptive practices in consumer transactions unlawful; examples

    (a) Unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful.

    (b) By way of illustration only and **\*\*_without limiting the scope_** of subsection (a) of this Code section, the following practices are declared unlawful:

    (1) Passing off goods or services as those of another;

(2) Causing actual confusion or actual misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) Causing actual confusion or actual misunderstanding as to affiliation, connection, or association with or certification by another;

## DAMAGES

The actions or inactions of the Defendants invasive procedure and gross negligence resulted in the Plaintiff suffering unnecessary physical trauma and mental anguish. The actions of Defendants have resulted in significant damage to the Plaintiff's credit and credit score, resulting in a decrease in credit availability and increase in interest rates and continue to prolong the damage for their wanton disregard of notice and dispute. The Defendants actions have resulted in an injury to Plaintiff that prolonged recovery unnecessarily and resulted in lost revenue, unnecessary lodging expenses and prolonged economic recovery.

## PUNITIVE DAMAGES

Plaintiff seeks punitive damages in the maximum amount allowable under the law. The actions of Defendants were unconscionable, violate the public trust, grossly unsafe and sought financial gain through a series of false and misleading statements, practices and procedures. The Defendants committed a criminal act, to which the Plaintiff is entitled to Punitive Damages.

## ECONOMIC DAMAGES

Due to the nature of the Credit Defamation incurred by Plaintiff, the damage is not clearly measurable, since the Plaintiff has

15

**notates punctuation by author

withdrawn from attempting any further credit requests, in order to avoid additional damage. Plaintiff can and will produce reports showing the decline in credit score as a result of the Defendants actions and a Letter of Credit Decrease from US Bank, identifying at least one credit line that was decreased due to the derogatory reporting by Defendant, WGM's, representatives.

Further, Plaintiff was declined for refinancing, due to a direct cause of Defendant WGM's derogatory actions.

The specific out of pocket cost exceeds $2,000, as Plaintiff was unable to work and confined to a hotel room while recovering from the unwarranted surgery.

The gross weekly revenue loss by Plaintiff in the period of recovery, less the normal three (3) days for the actual infection, exceeds $10,000.

The direct and proximate causes of economic damages are directly the result of all Defendants actions.

### TREBLE DAMAGES - FAIR BUSINESS PRACTICES ACT

The Plaintiff seeks treble damages of the amount that the Defendants, WGM and Emory have sought, for willful violation of the Fair Business Practices Act. This amount incurs the total sum of approximately $50,000. Additionally, Plaintiff seeks cost of all attorney fees and filing costs associated with bringing this action.

### RELIEF

Plaintiff respectfully requests the Court to enter a Judgement against Defendants providing:

16

**notates punctuation by author

A) Compensatory Damages in an amount to be determined by the jury

B) Treble Damages of the Compensatory Damages

C) Punitive Damages in an amount to be determined by the Jury

D) Loss of Revenue and Actual Costs incurred during the extra 10 days of recovery

E) Cost of Investigation

F) Cost of Filing, Service and any attorney fees and costs incurred for expert testimony.

Respectfully submitted,

David B. Smith
Plaintiff, Pro Se
PO Box 190
Merkel, TX 79536
(801) 703-8589

**notates punctuation by author

## CERTIFICATE OF SERVICE

I certify that on this _____ day of February 2015, Plaintiff has provided service to the Defendants by United States Certified Mail at the following locations and persons so named below with the Stamped Original Filings as tendered to the Clerk of the Court:

West Georgia Healthcare
Gerald N. Fulks
President/CEO
1514 Vernon Road
LaGrange, GA 30240

West Georgia Healthcare
Charis Acree
Sr. Vice President of Operations
1514 Vernon Road
LaGrange, GA 30240

James A. Brennan, MD
Emory Clarke-Holder Clinic
303 Smith Street
LaGrange, GA 30240

Emory Clarke-Holder Clinic
Attention: Administration Director
303 Smith Street
LaGrange, GA 30240

Julia Ballard, MD
West Georgia Health
1514 Vernon Road
LaGrange, GA 30240

**notates punctuation by author



EXHIBIT A

EXHIBIT B

KENDALL MEDITRACE

25.0 mm/s    10.0 mm/mV    4 by 2.5s + 1 rhythm 1d

MAC5K 009A

SMITH, DAVID B
M000494608                    W000106670406
DOB:  05/31/1961            ADM:  02/15/13
                             51Y   M

WEST GEORGIA MEDICAL CENTER

Vent. rate            98 bpm
PR interval          152 ms
QRS duration         134 ms
QT/QTc          356/456 ms
P-R-T axes       18  63  49

Normal sinus rhythm
Right bundle branch block
Inferior infarct, possibly acute
A-P-Lateral infarct, age undetermined
**** ACUTE MI ****
Abnormal ECG

Referred by: 900

Confirmed

EXHIBIT C



EXHIBIT D



EXHIBIT E

## WEST GEORGIA HEALTH SYSTEM
## LAGRANGE GEORGIA 30240

### ELECTROCARDIOGRAPH REPORT

**PATIENT:** SMITH,DAVID B      **ROOM:** 608-A

**ADDRESS:** PO BOX 190
        MERKEL,TX 79536      **ED ADMIT DATE:**02/15/13
**PHONE:** 801-703-8589      **ADMIT DATE:** 02/15/13
**DOB:** 05/31/1961      **DISCHARGE DATE:**
**AGE:** 51      **SEX:** M      **RACE:**CA
**ACCT #:** W00010670406
**MR#:** M000494608
**ATTENDING PHYS:** James Brennan, MD
**CONSULTING PHYS:**
**DICTATING PHYS:**
**PRIMARY CARE PHYS ON ADMISSION:** No Local

Ventricular Rate - 63 BPM
Atrial Rate - 63 BPM
P-R Interval - 174 ms
QRS Duration - 138 ms
Q-T Interval - 404 ms
QTC Calculation(Bezet) - 413 ms
Calculated P Axis - 34 degrees
Calculated R Axis - 47 degrees
Calculated T Axis - 64 degrees

Normal sinus rhythm
with sinus arrhythmia
Right bundle branch block
ST elevation consider inferolateral injury or acute infarct
** ** ** ** * ACUTE MI * ** ** ** **
Abnormal ECG

Draft

/
DD: 02/16/13 0733
DT:
JOB: 0216-0007

**EXHIBIT F**

**SMITH, DAVID B**
M000494608
51Y M
DOB: 05/31/1961
W00010670406
ADM: 02/15/13

West Georgia Health
Emergency Chest Pain – Page 1

Time of first contact with patient: ___1325___

All orders are standing, except those defined by physician by checking appropriate box.
Weight: __140__ lbs _____ kgs Height: __5'11"__ Allergies: __PCN__                                    □ NKA

|  |  | Time | Nurse Initial |
|---|---|---|---|
| 1. | STAT EKG upon arrival with ED physician to review.<br>First EKG: ☒ ED □ EMS □ Other:<br>Pain Assessment on Arrival: 0 1 2 3 ④ ⑤ 6 7 8 9 10 | 1325 | tv |
| 2. | **STEMI diagnosed:** ☒ Yes □ No  If Yes: | 1330 | tv |
|  | Activate Code STEMI (Goal: less than 10 minutes) | 1330 | tv |
|  | Screen for TNK  ☒ Eligible  □ Not Eligible – Why? | 1330 | tv |
|  | AMI Treatment Options                                    Copy to: ☒ patient ☒ chart |  |  |
| 3. | Continuous cardiac monitor with vital signs every 5-15 minutes | 1330 | tv |
| 4. | Aspirin STAT: 324 mg by mouth (four 81 mg baby aspirin) or 300 mg per rectum | 1330 | tv |
| 5. | O2 at 4 liters/minute per nasal cannula. If history of pulmonary disease or smoking, 2 liters/minute. | 1330 | tv |
| 6. | Establish IV access.  If STEMI obtain 2 IV access – left arm preferred. Utilize double lumen catheter if possible. IV fluid __NS KVO__ at _____ mL/hour.<br>#1 site/gauge __LAC #18__       #2 site/gauge  __DAC #18__ | 1330 | tv |
| 7. | Draw a rainbow of blood tubes (If STEMI include pink top tube/blood band)<br>CBCP, CMP, PT3/PTT, Cardiac Enzymes, Chest X-Ray | Drawn: _1332_<br>Resulted: _____ |  |
| 8. | IF INTUBATED POST ARREST, ADVISE RESPIRATORY THERAPY NEED ABG. | N/A | tv |
| 9. | **Pain Management: Repeat EKG in 20-30 minutes if first EKG negative and pain persists.**<br>EKG as needed for new chest pain, discomfort, or pressure. | q10min | tv |
|  | □  Nitroglycerine 0.4 mg sublingual x 1 as needed for chest pain. Ask physician before administering if patient has had 3 NTG tablets prior to arrival and/or systolic blood pressure equal to or less than 100 mm/hg.  **Document time/pain scale after administration.** | 1.<br>2b<br>3order | tv |
|  | ☒  Morphine 2 mg IV every 5 minutes as needed for chest pain x 3 doses.                    5mg<br>**Document time/pain scale after administration.** | 1.350<br>2.<br>3. | tv |
|  | □  NTG drip – Dose: Start at 10 mcg/minute (6mL/hour) and titrate to pain relief. | order | tv |
|  | □  Nitroglycerine paste _____ inches when patient is pain free. Hold if systolic blood pressure is below 100 mm/Hg. | order | tv |
| 10. | □  IV Lopressor Protocol | 1.<br>2. | tv |
|  | □  Lopressor 50 mg by mouth now                                      order tv | 3. | order tv |
| 11. | □  Lovenox 1 mg/kg subcutaneous **(not to be used in STEMI)**<br>□  IV Heparin for non-STEMI per Pharmacy Protocol<br>☒  IV Heparin for STEMI: Bolus **ONLY** 60 units/kg – maximum 4,000 units  4000units | 1331 | tv |

Date: __2/15/13__    Time: __1330__

Physician Signature

| Time | BP | P | R | T | PO% |
|---|---|---|---|---|---|
| 1335 | 140/89 | 94 | 26 | 98x | 99 |
| 1345 | 134/89 | 99 | 24 |  | 98 |
| 1350 | 154/92 | 100 | 30 |  | 97 |
|  |  |  |  |  |  |

Date: __2/15/13__

Time: __1330__

Nurse Signature

**EXHIBIT G**



SMITH, DAVID B 51Y M
M000494608 W00010670406
DOB: 05/31/1961 ADM: 02/15/13

West Georgia Health
Emergency Chest Pain – Page 2

**Initiate ONLY for STEMI / Emergency PCI**

| | | Time | Nurse Initial |
|---|---|---|---|
| 12. | Code STEMI Activated (Goal – less than 10 minutes from arrival) | 1326 | tv |
| 13. | Cath Lab Team and Interventionalist Confirmed: (Goal – less than 25 minutes from arrival) | 1352 | tv |
| 14. | Admit Inpatient Status: Diagnosis Acute STEMI Location of MI: Inferior | 1325 | tv |
| 15. | **Repeat 12-lead EKG every 10 minutes while in ED**<br>**Inferior MI obtain right-sided (RV4) EKG x 1** | 1332 | tv |
| 16. | **PCI Inclusion Criteria:**<br>☑ 18 years or older<br>☑ ACS (Acute Coronary Syndrome) presentation **AND/OR**<br>More than 1 mm ST elevation in 2 or more continuous leads **OR** new LBBB **OR**<br>More than 1 mm ST depression in V1 or V2 – posterior MI<br>☐ Females 55 years old and younger with child-bearing capacity confirm pregnancy status | Inclusion criteria confirmed:<br>1335<br>Dr. Ballard<br>tv | |
| 17. | STAT Labs: Type and Hold; Beta HCG serum pregnancy test / qualitative (if indicated)<br>In **AM**: Fasting BMP, TSH and Lipid Profile. Other: ________ | 1330 | tv |
| 18. | Nothing by mouth except medication | 1335 | tv |
| 19. | Informed consent for Heart Catheterization / Angioplasty / Stent | 1354 | tv |
| 20. | ACLS transport to Cath Lab by 2 licensed staff<br>**Ideal time to Cath Lab:** 1410 **(Less than or equal to triage time + 45 minutes)** | Arrival time to Cath Lab: 1357 | |
| 21. | PCI aborted: ☐ Yes ☒ No Reason for PCI abort:<br>☐ Can't be in Cath Lab within 45 minutes of ED triage time<br>☐ Cath Lab team unconfirmed 25 minutes after ED arrival time<br>☐ Cath Lab is occupied and can't be cleared in an appropriate time<br>☐ Other: ________<br>If aborted, initiate Fall Back Therapy: ☐ Yes ☐ No<br>☐ TNKase Protocol and ACS orders<br>☐ If ineligible for thrombolytic therapy, transfer to another PCI facility<br>**Ideal time to Thrombolytic Therapy:** ________<br>**(Less than or equal to triage time + 30 minutes)** | Fall Back Therapy initiated:<br>☐ Thrombolytics Time given: ____<br>☐ Transfer | |

Date: 2/15/13 Time: 1306 Physician Signature: [signature]

Family escorted to Cath Lab waiting room: ☒ Yes ☐ No

Jill, RN
Report to Cath Lab Nurse

[signature]
Nurse Signature

Date: 2/15/13

Time: 1345

EXHIBIT G



**SMITH, DAVID B**
M000494608                                   51Y  M
                                         W00010670406
-          DOB:  05/31/1961      ADM:  02/15/13



West Georgia Health
Acute Myocardial Infarction (Heart Attack)
Treatment Options

### *You are having a heart attack:*
An artery that feeds your heart muscle with blood and oxygen is blocked, usually due to a blood clot in
the heart artery.

### *Methods of treatment:*
Administer a **thrombolytic** (clot-busting) drug that dissolves the blood clot.
Use a small balloon to open up the artery – this is **angioplasty**.

### *Which method is better?*
In the majority of studies, patients treated with the balloon procedure had a lower rate of death, second
heart attacks and strokes.

In the studies that have been done, it has been found that there is a very low percentage (1/1000) of
angioplasty patients who also need heart surgery. Therefore, the Georgia Department of Community
Health has approved the performing of angioplasty at qualified community hospitals that do not have
on-site heart surgery (bypass surgery) capability. Extremely qualified physicians and staff are available
to you here for this procedure, just as you would have at hospitals where cardiac surgery is provided. If
for any reason, your physician decides that you need cardiac surgery, you will be transferred to a
hospital where this can be provided.

### *What is angioplasty?*
By placing a catheter in an artery in the groin and advancing to the heart, dye is injected so that
pictures can be taken to see if there is a blockage in the arteries of the heart causing blood to not flow
freely to the heart muscle. If a blockage is found, a balloon on the tip of the catheter will be inflated to
open the blocked artery. Usually it is necessary to place a tiny metal tube (a stent) in the artery that will
assure the artery will remain open. The catheter is removed and the procedure is complete.

### *Risks and Benefits of Angioplasty:*
**Major risks:**  Death, heart attack or stroke in less than 0.1% (1/1000) patients.
**Other risks:**  Allergy to dye, injury to the kidney from the use of the dye, injury to the heart or groin
blood vessel that could require surgery to fix, excessive bleeding possibly requiring a transfusion,
infection, abnormal heart rhythms, discomfort in the groin or chest during or after the procedure.  This
procedure could fail to open the artery in 1/10 people at which time other treatment options may be
recommended.

**Benefit:**  Time is crucial in this treatment to save heart muscle function. The primary benefit is that you
will be treated right here and now, with primary angioplasty, without a time delay that is associated with
transfer (distance, traffic accidents, etc.) This provides the possibility of preventing or reducing the
damage to the heart and making the outcome more beneficial to you.

**Signing this paper only confirms that the information on this sheet has been presented to you.
This is not a consent for any procedure or therapy.**

2/15/13                1353

Date                   Time                 Patient Signature

EDUC C7130-02 4/11 Replaces 5/5/06    White-Chart  Yellow-Patient   **AMI Treatment Options**

EXHIBIT  H

**West Georgia Health**
**Cath Lab**
**PCI Checklist**

M000494608      W00010670406
SMITH, DAVID B                    51Y   M
-                    ADM:02/15/13   DOB:05/31/1961
Ballard, Julia E MD

**Pre-Cath Checklist**

Triage Time: _1325_
Ideal Time to Cath Lab: _1410_
(less than or equal to triage + 45 minutes)
Cath Lab Arrival Time: _1357_

☑ EMS Notified PCI Standby (ex 5828)

☑ Chest Pain Order Set      ❑ N/A

☑ Post PCI bed available room # _____

☑ Unit notified of PCI

Labs (check all that apply)
❑ pending   ❑ critical   ☑ resulted/reported

☑ Aspirin  _PTA 324 6_
   ❑ Lopressor            ❑ N/A
❑ Integrillin        ❑ N/A
   ❑ Plavix Dose _____   ❑ N/A

☑ Informed Consent signed and on chart

☑ 2 – IV lines  _w/o_     ☑ N/A

☑ Defibrillator / pads applied

☑ Patient Height _180_ cm
☑ Patient Weight _84.1_ kg

Allergies
   ☑ NONE
   ❑ Contrast
   ❑ Medications
   ❑ Tape
   ❑ Iodine
   ❑ Other: _____

Chest Pain at Entry
☑ No     ❑ Yes    Grade ____/10
   _back pain 4/10_
☑ IABP Ready

**Other Supplies Ready**
☑ Fluids     ☑ Atropine
❑ Pressors   ❑ Pacer

**No Reflow**
☑ Verapamil (available)
   ☑ Adenosine (available)
☑ Nipride (available)
   ☑ Nitroglycerine (on tray)

**During Intervention**

ACT: Initial _229_ sec _1919_ Time
          _____ sec _____ Time
          _____ sec _____ Time
          _____ sec _____ Time

☑ Heparin  ❑ Angiomax  _ER_
           _4000_ dose _____ Time
          _____ dose _____ Time
          _____ dose _____ Time
          _____ dose _____ Time

_no intervention_

Ideal Balloon Inflation Time _1455_
(less than or equal to triage + 90 minutes)
Actual Balloon Inflation Time _N/A_

**Post Intervention**

N/A ❑ Gp IIb/IIIa Antagonist (Integrillin)

N/A ❑ Plavix Post PCI _____ dose _____ time

N/A ❑ Effient Post PCI _____ dose _____ time

N/A ❑ Brilinta Post PCI _____ dose _____ time

Chest Pain at Discharge
☑ No     ❑ Yes    Grade _0_ /10

☑ Report to Receiving Nurse: _Lydia pcu_
   Utilizing Post Cath / PCI card

❑ EMS notified PCI completed (ex 5828)
   ☑ Tertiary facility notified PCI completed
❑ Contact # for sheath pull: _N/A_
   ☑ Initiate post PCI orders

CARDIO C233 9/12 Replaces 4/11
**PCI Checklist**

_2/15/13_  _1442_  _✓_
Date    Time    Nurse or Tech Signature

EXHIBIT I

West Georgia Health
Heart Clinic Cath Lab
Post Procedure Progress Note

M000494608        W00010670406
SMITH, DAVID B              51Y  M
-                    ADM:02/15/13  DOB:05/31/196
Ballard, Julia E MD

**Pre Procedure Diagnosis:**   ❑ Angina  ❑ ACS  ❑ STEMI  ❑ Abnormal Stress Test _____
☑ Chest Pain  ❑ Dyspnea  ❑ Syncope  ❑ CHF  ❑ Dysrhythmia
❑ Other: _____

**\*Post Procedure Diagnosis /**  Coronaries: Normal CAD     LV Function: ❑ Normal  ❑ Abnormal  LVEF __ ❑ %
**Findings**        ___% LM ___% LAD ___% Circ ___%  RCA  Other: _____
N Aortic: ❑ Stenosis  ❑ Regurg. N Mitral: ❑ Stenosis  ❑ Regurg.

**\*Procedure:**   ☑ Left Heart Cath   ❑ Right Heart Cath   ❑ Peripheral Angiogram
☑ Coronary Angio  ☑ Left V-gram  ❑ Aortogram  Runoff _____
❑ Selective _____
❑ Temp. Pacer  ❑ Perm. Pacer  ❑ Loop Recorder  ❑ IVC Filter

**Vascular Access:**    ❑ Right Femoral  ☑ Left Femoral  ❑ Right Radial  ❑ Other: _____

**Vascular Closure:**   ❑ Manual  ☑ Perclose  ❑ Starclose  ❑ Mynx  ❑ Angioseal  ❑ Other: _____
N Coronary Intervention: _____

N Peripheral Intervention: _____

**\*Specimens Removed:**   _____ or ☑ N/A   Disposition: _____ or ☑ N/A

**\*Primary Surgeon**   ☑ Brennan  ❑ Gedevanishvili  ❑ Gore  ❑ Rajeev  ❑ Williams

**\*Assistant Surgeon:**   _____ or ☑ N/A

**Anesthesia:**   ☑ Local  ☑ Moderate Sedation  ❑ Regional  ❑ Spinal  ❑ General

**\*Estimated Blood Loss:**   < 10 mL      ❑ Contrast Admin _____ mL

**Complications:**   ☑ None  ❑ _____

**Condition of Patient:**   stable      Plan: _____

\*Required Elements of Immediate Postoperative/Post Procedure Progress Note

4/15/13    1516
**\*Date**    **\*Time**

**\*Physician Signature**
PROG  C372  6/12  Replaces 10/09      **Cath Lab Post Procedure Progress Note**



# WEST GEORGIA HEALTH SYSTEM
## LAGRANGE GEORGIA 30240

### Physician Documentation Report

**PATIENT:** SMITH,DAVID B                                **ROOM:** 224-A
**ADDRESS:** PO BOX 190
      MERKEL,TX 79536                    **ED ADMIT DATE:** 02/15/13
**PHONE:** 801-703-8589                                 **ADMIT DATE:** 02/15/13
**DOB:** 05/31/1961                                          **DISCHARGE DATE:**
**AGE:** 51                                                         **SEX:** M          **RACE:** CA
**ACCT #:**  W00010670406
**MR#:** M000494608
**ATTENDING PHYS:** James Brennan, MD
**DICTATING PHYS:** Julia Ballard, MD
**PRIMARY CARE PHYS:** No Local

## HPI

**- History Of Present Illness**

**History Per:** Patient
**Chief Complaint (MD):** long dist truck driver c./o chest pain since last night, worse on inspir
**Onset:** Yesterday
**Duration:** Hours
**Radiation:** No
**Location Of Discomfort:** No Radiation
**Quality/Severity:** Sharpness, Pressure, Pain
**Maximum Severity of Discomfort:** 7
**Severity Of Discomfort:** Medium
**Current Symptoms:** Still Present, Improved
**Associated Symptoms:** Dyspnea, Diaphoresis.  denies: Syncope
**Exacerbating Factors:** Turning/Movement, Deep Breathing, Exertion
**Alleviating Factors:** None
**Thoracic Aortic Dissection (TAD) Risk Factors:** HTN (not on meds per wife)
**Additional History From:** Patient, Family, Prior Records
**Additional HPI Information:** also c/o severe right groin pain, no injury - never had dvt.  no
hemoptysis.  no hx heart disease.  is a smoker

## PMH

**- Past Medical History**

**Past Medical History:** STATES: Hypertension

## ROS/Social Hx

**- Social/Family History**

**History of Smoking?:** Yes
**Etoh Use:** No
**Resident Status:** Lives Locally

**- Review Of Systems**

EXHIBIT J

WEST GEORGIA HEALTH SYSTEM
LAGRANGE GEORGIA 30240

Physician Documentation Report

Name: SMITH,DAVID B
MR #: M000494608
Acct #: W00010670406
Room: 224-A

**ROS:** Leg pain, Myalgias. negative: Fever, Chills, Cough, Abd pain, Hematochezia, Hematuria, Dysuria, Double Vision, Headache, Sore Throat, Skin Rash, Anxiety
**All Other Systems Reviewed And Are:** Negative Except As Marked

## Physical Exam (CP)

**- General**

**Triage Notes Reviewed:** Yes
**Vital Signs Reviewed In The EMR:** Yes
**Appears:** Uncomfortable
**Skin:** Warm, Dry, Pallor
**ENT:** Normal Inspection
**Neck:** Normal Inspection
**Respiratory:** No Resp. Distress, Normal Breath Sounds, Chest Non-tender
**Cardiac:** Regular Rate & Rhythm, No Murmur, No Gallop, No Friction Rub
**GI/Abdomen:** Soft, Non-Tender, No Organomegaly
**Extremities:** Other (right groin tenderness)
**Neurological:** External Sensation Intact, External Strength Intact
**Psychiatric:** Oriented x3, Mood & Affect Normal

## Diagnostic Evaluation

**- Diagnostic Evaluation**

**ECG Interpretation:** Interpreted By ERMD (RBB, acute inferior st elevation)
**Chest X-ray:** Interpreted by ERMD, No Acute Disease

**- U/S (Enter Ultrasound Type Here)**
  ** right leg
**Ultrasound:** Negative (poss nodes), Interpreted By Rad. MD

## Labs Reviewed

**Laboratory Statement:** Any lab tests that have been ordered have been reviewed, & results considered in the medical decision making process.
**All Lab Results For This Visit (If Avaliable):**

## Laboratory Results

**02/15/13 13:31:** WBC 13.0 H, RBC 5.36 H, Hgb 17.0, Hct 49.4, MCV 92.2, MCH 31.7, MCHC 34.3, RDW 12.7, Plt Count 217.0, Neut % 68.6, Lymph % 17.7 L, Mono % 12.4 H, Eos % 1.0, Baso % 0.3, Neut # 8.9, Lymph # 2.3, Mono # 1.6, Eos # 0.1, Baso # 0.0, PT 13.0, INR (Anticoag Therapy) 0.94, PTT (Anticoag Therapy) 34.1, D-Dimer 0.3, Sodium 130 L, Potassium 3.7, Chloride 95 L, Carbon Dioxide 28, Anion Gap 11, BUN 10, Creatinine 0.9, Estimated GFR 89, Glucose 128 H, Calculated Osmolality 252 L, Calcium 8.8, Total Bilirubin 0.8, AST 14, ALT 17, Alkaline Phosphatase 72, Pro-B-Natriuretic Pept 226.50, Total Protein 7.3, Albumin 4.4
**02/15/13 13:35:** POC Troponin I 0.00

**Result Diagrams:**



WEST GEORGIA HEALTH SYSTEM
LAGRANGE GEORGIA 30240

Physician Documentation Report

Name: SMITH,DAVID B
MR #: M000494608
Acct #: W00010670406
Room: 224-A

02/15/13 13:31

$$13.0H \diagup \dfrac{17.0}{49.4} \diagdown 217.0$$

02/15/13 13:31

| 130L | 95L | 10 | |
|------|-----|-----|------|
| 3.7 | 28 | 0.9 | 128H |

**Lab Comments:** troponin x 1 is nl.  d dimer is nl
**Laboratory Statement:** Lab data incorporated in this document has been reviewed, by the ED clinician & may have been summarized or otherwise, modified. The original full report is available in Meditech., Refer to the HIM for the performing site information.

### ED Course

**- Course Completed While In ED**

**Prior Records Reviewed:** Yes
**ED Course:**


02/15/13 14:12
STEMI proto instituted after EKG
2 patients on cath table - will be 10 mins before completion and turnover
Dr Brennan here to evaluate pt
**Diagnosis Considered:** ACS and Cardiac Ischemia, Pulmonary Embolus

### Discharge

**- Clinical Impression**

**Clinical Impression:** Chest Pain Acute, AMI inferior, (See Additional IC Text)
**Additional Clinical Impression Information:** tobacco abuse.  right groin pain, no evidence of dvt on US.  hypertension, uncontrolled

**- For Patients Admitted with CP**

**ASA Given/Not Given While in the ED:** Given in ED
**ST Segment Elevation MI Pts:** YES Intervention Cardio Paged/Contacted Within 10 Mins Of EKG

**V/S reviewed. Abnormals reassessed.:** Vital Signs Reviewed
**Disposition:** Admitted
**Condition:** Critical
**Medication Reconciliation Sheet Reviewed:** Yes

Signed



WEST GEORGIA HEALTH SYSTEM
LAGRANGE GEORGIA 30240

Physician Documentation Report

Name: SMITH,DAVID B
MR #: M000494608
Acct #: W00010670406
Room: 224-A

<Electronically signed by Julia Ballard, MD>02/15/13 1415

Julia Ballard, MD

BALLARDJ
DD: 02/15/13 1407
DT: 02/15/13 1407
JOB: 0215-0078

   

RUN DATE: 02/16/13                    West Georgia Health System                    PAGE: 1
RUN TIME: 1541                  1514 Vernon Road.   LaGrange, Georgia 30240

David E. Martin, MD                                                 G.J. Giesler Jr, MD
Medical Director, Laboratory                                  Medical Director, Pulmonary

```
Name: SMITH,DAVID B                   Age/Sex: 51/M        Location: PC
Acct: W00010670406  Unit: M000494608 Status:  ADM IN    Room/Bed: 608-A
Reg:  02/15/13      Disch:           Att Dr:  James Brennan, MD
```

### *** HEMATOLOGY ***

| Date<br>Time | -------2/15/13-------<br>1331          1340 | 2/16/13<br>0210 | | Reference | Units |
|---|---|---|---|---|---|
| WBC | 13.0  H | | 14.2  H | | | (4.5-10.8) | K/UL |
| RBC | 5.36  H | | 5.03 | | | (3.80-5.10) | M/UL |
| HGB | 17.0 | | 15.9 | | | (13.5-17.5) | G/DL |
| HCT | 49.4 | | 46.1 | | | (38.8-50.0) | % |
| MCV | 92.2 | | 91.6 | | | (80.0-100.0) | FL |
| MCH | 31.7 | | 31.5 | | | (26.0-32.0) | PG/ML |
| MCHC | 34.3 | | 34.4 | | | (31.0-36.9) | G/DL |
| RDW | 12.7 | | 13.0 | | | (11.5-14.5) | % |
| PLT | 217.0 | | 191.0 | | | (130-400) | K/UL |
| NEUT% | 68.6 | | 80.6  H | | | (42-72) | % |
| LYMPH% | 17.7  L | | 7.6  L | | | (20-51) | % |
| MONO% | 12.4  H | | 11.3  H | | | (0.0-10.0) | % |
| EO% | 1.0 | | 0.3 | | | (0.0-5.0) | % |
| BASO% | 0.3 | | 0.2 | | | (0.0-2.0) | % |
| ABS. NEUT | 8.9 | | 11.4 | | | | K/UL |
| LY# | 2.3 | | 1.1 | | | | K/UL |
| MO# | 1.6 | | 1.6 | | | | K/UL |
| EO# | 0.1 | | 0.0 | | | | K/UL |
| BA# | 0.0 | | 0.0 | | | | K/UL |
| SED RATE | | 7 | | | | (0-15) | MM/HR |

### *** COAGULATION ***

| Date<br>Time | 2/15/13<br>1331 | | | Reference | Units |
|---|---|---|---|---|---|
| PT | 13.0 | | | (12.3-15.3) | SEC |
| INR | 0.94 | | | | |
| PTT | 34.1 | | | (25.0-38.0) | SEC |
| DIME | 0.3 | | | (0-0.5) | FEUug/mL |

### ***CHEMISTRY***

| Date<br>Time | ----------------2/15/13------------------<br>1331          1335          1420 | | | | Reference | Units |
|---|---|---|---|---|---|---|
| BUN | 10 | | | 11 | (6-20) | MG/DL |
| NA | 130  L | | | 147  H | (136-145) | MMOL/L |
| K | 3.7 | | | 4.1  # | (3.4-5.0) | MMOL/L |
| CL | 95  L | | | 112  H | (98-107) | MMOL/L |
| CO2 | 28 | | | 26 | (22-29) | MMOL/L |
| GLUCOSE | 128  H | | | 126  H | (74-106) | MG/DL |

```
Patient: SMITH,DAVID B              Age/Sex: 51/M        Acct:W00010670406 Unit:M000494608

                                                        INPATIENT CUMULATIVE SUMMARY
```

EXHIBIT K

 

David E. Martin, MD                                              G.J. Giesler Jr, MD
Medical Director,Laboratory                                Medical Director,Pulmonary

---

Patient: SMITH,DAVID B                    W00010670406      (Continued)

***CHEMISTRY CONTINUED***

| Date | -----------------2/15/13----------------- | | | | | |
|------|------|------|------|------|-----------|-------|
| Time | 1331 | 1335 | 1420 | | Reference | Units |
| CA   | 8.8 | | | 7.8 | L | (8.4-10.2) | MG/DL |
| CREA | 0.9 | | | 0.8 | | (0.7-1.2) | MG/DL |
| eGFR | 89(A) | | | 102(A) | | | |

     (A)  *** Multiply GFR by 1.21 if patient is African American ***

       Reference Range
       -----------------------
       > = 60 mL/min/1.73 m^2

| AGAP | 11 | | | 13 | # | (10-20) | MMOL/L |
|------|------|------|------|------|---|-----------|---------|
| OSMC | 252 | L | | 284 | L | (285-319) | MOSM/KG |
| TOTAL PROTEIN | 7.3 | | | | | (6.6-8.7) | GM/DL |
| ALB  | 4.4 | | | | | (3.5-5.2) | GM/DL |
| TBIL | 0.8 | | | | | (0.0-1.2) | MG/DL |
| ALKP | 72 | | | | | (40-130) | U/L |
| AST  | 14 | | | | | (0-40) | U/L |
| CHOL | | | | 124 | | (100-199) | MG/DL |
| TRIG | | | | 55 | | (0-199) | MG/DL |
| HDL  | | | | 35(B) | | | MG/DL |

     (B)  Reference Ranges
       -----------------------------------------
       Low  (High Risk):           <40  mg/dL
       Moderate (Moderate Risk): 40-59 mg/dL
       High (Low Risk):          >=60  mg/dL

| LDL | | | | 78(C) | | | MG/DL |
|-----|---|---|---|-------|---|---|-------|

     (C)  Reference Ranges
       -----------------------------------------
       Optimal (Low Risk): <100   mg/dL
       Moderate Risk:     100-159 mg/dL
       High Risk:          >160   mg/dL

| CHOL/HDL RATIO | | | | 3.5(D) | | |
|----------------|---|---|---|--------|---|---|

     (D)  Calculated Chol/HDL Ratio Goal
       -----------------------------------------
       Females (without C.H.D.*)  <4.4
       Males   (without C.H.D.*)  <5.1
       -----------------------------------------
       * Coronary Heart Disease

---

Patient: SMITH,DAVID B                   Age/Sex: 51/M        Acct:W00010670406 Unit:M000494608

 

**RUN DATE:** 02/16/13                      West Georgia Health System                      **PAGE:** 3
**RUN TIME:** 1541              1514 Vernon Road.  LaGrange, Georgia 30240

**David E. Martin, MD**                                              **G.J. Giesler Jr, MD**
**Medical Director, Laboratory**                              **Medical Director, Pulmonary**

---

**Patient:** SMITH, DAVID B                        W00010670406    **(Continued)**

| ***CHEMISTRY CONTINUED*** |
|---|

| Date | ----------------2/15/13----------------- | | | | |
|---|---|---|---|---|---|
| Time | 1331 | 1335 | 1420 | Reference | Units |
| BEDSIDE TROP I | | 0.00 | | (0.00-0.10 NG/ML | |
| ALT | 17 | | | (0-41) | U/L |
| PROBNP | 226.50 | | | (0-900) | PG/ML |

| Date | 2/15/13 | 2/16/13 | | |
|---|---|---|---|---|
| Time | 2053 | 0210 | Reference | Units |
| BUN | | 17  # | (6-20) | MG/DL |
| NA | | 135  L | (136-145) | MMOL/L |
| K | | 4.2 | (3.4-5.0) | MMOL/L |
| CL | | 102 | (98-107) | MMOL/L |
| CO2 | | 24 | (22-29) | MMOL/L |
| GLUCOSE | | 138  H | (74-106) | MG/DL |
| CA | | 8.7  # | (8.4-10.2) | MG/DL |
| CREA | | 0.9 | (0.7-1.2) | MG/DL |
| eGFR | | 89(E) | | |

(E)  *** Multiply GFR by 1.21 if patient is African American ***

Reference Range
-----------------------
> = 60 mL/min/1.73 m^2

| AGAP | | 13 | | (10-20) | MMOL/L |
|---|---|---|---|---|---|
| OSMC | | 265  L | | (285-319) | MOSM/KG |
| TOTAL PROTEIN | | 6.4  L | | (6.6-8.7) | GM/DL |
| ALB | | 4.0 | | (3.5-5.2) | GM/DL |
| TBIL | | 0.5  # | | (0.0-1.2) | MG/DL |
| ALKP | | 69 | | (40-130) | U/L |
| AST | | 12  # | | (0-40) | U/L |
| CHOL | | 140  # | | (100-199) | MG/DL |
| TRIG | | 128  # | | (0-199) | MG/DL |
| HDL | | 40(F)  # | | | MG/DL |

(F)  Reference Ranges
-----------------------------------------
Low  (High Risk):              <40   mg/dL
Moderate (Moderate Risk): 40-59 mg/dL
High (Low Risk):            >=60  mg/dL

---

**Patient:** SMITH, DAVID B                  **Age/Sex:** 51/M        **Acct:**W00010670406 **Unit:**M000494608

                                                    **INPATIENT CUMULATIVE SUMMARY**

 

RUN DATE: 02/16/13
RUN TIME: 1541

West Georgia Health System
1514 Vernon Road.  LaGrange, Georgia 30240

PAGE: 4

David E. Martin, MD
Medical Director, Laboratory

G.J. Giesler Jr, MD
Medical Director, Pulmonary

Patient: SMITH, DAVID B                    W00010670406      (Continued)

```
***CHEMISTRY CONTINUED***
```

| Date<br>Time | 2/15/13<br>2053 | 2/16/13<br>0210 | | Reference | Units |
|---|---|---|---|---|---|
| LDL | \| | \| 74 (G) \| | | \| | MG/DL |

   (G)  Reference Ranges
```
----------------------------------------
```
       Optimal (Low Risk):  <100    mg/dL
       Moderate Risk:      100-159 mg/dL
       High Risk:          >160    mg/dL

| CHOL/HDL RATIO \| | | \| 3.5 (H) \| | | \| |

   (H)  Calculated Chol/HDL Ratio Goal
```
----------------------------------------
```
       Females (without C.H.D.*)  <4.4
       Males   (without C.H.D.*)  <5.1
```
----------------------------------------
```
       * Coronary Heart Disease

| TRON | \| < 0.300 | \| | \| | \| (0.00-0.40 NG/ML |
| ALT | \| | \| 15 #\| | \| (0-41) | U/L |

```
***SPECIAL CHEMISTRY***
```

| Date<br>Time | 2/15/13<br>1420 | Reference | Units |
|---|---|---|---|
| TSH | \| 2.09 | \| (0.27-4.20 uIU/ML |

```
Microbiology Specimen Summary
```

| Col Date | Time | Specimen # | Source | Sp Desc | P/F | Organisms ... |
|---|---|---|---|---|---|---|
| 02/16/13 | 0130 | 13:M0002401R | URINE | CLEAN CATC | P | <none> |
| 02/16/13 | 0210 | 13:BC0000848S | BLOOD | VENIPUNCT | P | <none> |
| 02/16/13 | 0215 | 13:BC0000847U | BLOOD | VENIPUNCT | P | <none> |

Patient: SMITH, DAVID B              Age/Sex: 51/M        Acct:W00010670406 Unit:M000494608

INPATIENT CUMULATIVE SUMMARY